UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| SANFORD H. GREELEY, | ) | CIV. 10-5003-JLV |
| SHIRLEY A. GREELEY, and | ) | |
| SHAWN JOHNSON, | ) | |
| | ) | ORDER |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT D. WALTERS, | ) | |
| DARLA K. WALTERS, and | ) | |
| ANTHONY WALTERS, | ) | |
| | ) | |
| Defendants. | ) | |

**PROCEDURAL HISTORY**

On March 23, 2011, plaintiffs filed a multiple count amended
complaint against the defendants.  (Docket 20).  The amended complaint
asserts various claims for breach of contract, deceit and rescission of a
contract for the sale and purchase of certain property in Butte County,
South Dakota, and Goshen County, Wyoming, as well as claims for money
damages and punitive damages.  Id.  Through counsel, on April 13, 2011,
defendants Robert D. Walters and Darla K. Walters ("Walters") filed their
answer to the amended complaint.  (Docket 25).  Counsel for Walters was
later allowed to withdraw.  (Docket 37).

Defendant Anthony Walters was served with the amended complaint
on April 27, 2011.  (Docket 26-1).  Defendant Anthony Walters did not file

an answer or other responsive pleading.  On October 24, 2012, the Clerk of Court, pursuant to Fed. R. Civ. P. 55(a), filed an entry of default in favor of plaintiffs and against defendant Anthony Walters.  (Docket 54).

On February 5, 2013, the court filed an order granting plaintiffs' motion for partial summary judgment against Robert D. Walters and Darla K. Walters, jointly and severally.  (Docket 55).  The order related to the transaction involving the 160 acre parcel in Butte County, South Dakota.  Id. at p. 6.  The order entitled plaintiffs Sanford H. Greeley and Shirley A. Greeley, jointly and severally, to the following:

1. [A] money judgment for $232,268.47 against defendants Robert D. Walters and Darla K. Walters, jointly and severally;

2. [P]rejudgment interest of $105,706.04 against defendants Robert D. Walters and Darla K. Walters, jointly and severally, to the judgment date of February 5, 2013; and

3. [P]ost-judgment interest as calculated pursuant 28 U.S.C. 1961(a) against defendants Robert D. Walters and Darla K. Walters, jointly and severally, from the judgment date of February 5, 2013.

Id. at pp. 11-12.  A judgment was entered the same day.  (Docket 56).

The following claims were the subject of a court trial:

1. Are plaintiffs Sanford H. Greeley and Shirley A. Greeley entitled to rescission of an agreement between plaintiffs and defendants Robert D. Walters and Darla K. Walters relating to the purchase of 1,040 acres in Goshen County, Wyoming?

2

2.    What damages, if any, are plaintiffs Sanford H. Greeley and Shirley A. Greeley entitled to recover against defendants Robert D. Walters and Darla K. Walters relating to the 1,040 acres in Goshen County, Wyoming?

3.    Did defendants Robert D. Walters and Darla K. Walters commit actual fraud against plaintiffs Sanford H. Greeley and Shirley A. Greeley relating to the 1,040 acres in Goshen County, Wyoming?

4.    Are plaintiffs Sanford H. Greeley and Shirley A. Greeley entitled to recover punitive damages against defendants Robert D. Walters and Darla K. Walters relating to the 1,040 acres in Goshen County, Wyoming?

5.    Are plaintiffs Sanford H. Greeley, Shirley A. Greeley and Shawn Johnson entitled to rescission of an agreement between plaintiffs and defendants Robert D. Walters, Darla K. Walters and Anthony Walters relating to the purchase of 480 acres in Goshen County, Wyoming?

6.    What damages, if any, are plaintiffs entitled to recover against defendants relating to the 480 acres in Goshen County, Wyoming?

7.    Did defendants commit actual fraud against plaintiffs relating to the 480 acres in Goshen County, Wyoming?

8.    Are plaintiffs entitled to recover punitive damages against defendants relating to the 480 acres in Goshen County, Wyoming?

9.    Did defendants Robert D. Walters and Darla K. Walters commit actual fraud against plaintiffs Sanford H. Greeley and Shirley A. Greeley relating to the Butte County, South Dakota, property?

3

10.     Are plaintiffs Sanford H. Greeley and Shirley A. Greeley entitled to recover punitive damages against defendants Robert D. Walters and Darla K. Walters relating to the Butte County, South Dakota, property?

(Docket 59).

## FACTS

A court trial was held on July 22, 2013.  (Docket 62).  Present were the plaintiffs together with their attorneys Thomas Brady and Richard Pluimer, and defendant Robert D. Walters, appearing *pro se*.  Id.  The following witnesses testified: Sanford Greeley, Shirley Greeley, Shawn Johnson, and Robert Walters.  Id.  Plaintiffs' trial exhibits 1-36 were admitted without objection from Mr. Walters.

The court finds Mr. Greeley generally credible with some confusion on dates because of the passage of time.  Mrs. Greeley and Shawn Greeley were both credible witnesses and Mr. Walters was not credible, but rather was deliberately deceptive and disingenuous.  Based on the parties' presentation at trial, the court finds the following facts relevant to the issues between the parties.

Sanford and Shirley Greeley are retired farmers from the Brownsdale, Minnesota, area.  Prior to their retirement in 2000 they farmed a total of 1,000 acres, 300 acres which they owned with the remainder rented.  Mr. Greeley met Robert Walters in the 1970s.  Mr. Greeley attended farm auctions over the years where Mr. Walters was an auctioneer.  Mr. Greeley

4

bought and sold a number of full-sized farm tractors through Mr. Walters
and participated in a number of consignment sales with him as well.

During this time period Mr. Walters was living in Belle Fourche, South
Dakota, and boasted of making easy money buying land around Belle
Fourche.  He declared at one point he made $400,000 selling an acreage in
Spearfish, South Dakota, to Calabea's sporting goods company.  Mr. Walters
claimed to be the biggest realtor in the state of South Dakota.  He was
aware of the Greeleys' retirement, the fact they had a significant amount of
money but were losing money in the stock market, and they were interested
in investing in real estate.  Mr. Walters approached them to join him in
several real estate ventures.

Mr. Walters showed Mr. and Mrs. Greeley a number of potential
investment properties in the Belle Fourche area.  During one trip in June
2008, Mr. Walters showed the Greeleys some parcels of irrigated and non-
irrigated land.  During the course of the inspection, Mr. Walters told the
Greeleys he had previously sold a particular parcel of farm ground for
$1,700 per acre.  He offered to sell a 160 acre parcel he owned for $1,425
per acre, after which he would rent it back from the Greeleys for $125 per
acre.  Mr. Walters said he never borrowed money, and he bought and paid
for everything with cash.  Mr. Walters seemed skilled to farm his property as
he showed them new John Deere farm equipment.  It appeared he was

running a beautiful operation.  The comparable sales Mr. Walters mentioned earlier made his offer look very reasonable.  Based on Mr. Walters' representations, the Greeleys felt the purchase price was at the low end of market value and with a cash renter the property would generate a good investment return.

Mr. Greeley testified he had complete confidence in Mr. Walters as he appeared to be a straight shooter and an honest person.  Mr. Greeley acknowledged some check clearing issues with Mr. Walters in the past where Mr. Greeley had to wait for the money, but he always got paid.

On June 17, 2008, the Greeleys met Mr. Walters to consummate the deal.  Mr. Walters, in his own handwriting, prepared a memorandum of their agreement.  (Exhibit 1).  The Greeleys were to pay $232,000.  Id.  Mr. Walters signed the agreement.  Id.  Greeleys were told Mr. Walters would provide title insurance which would show clear title in his name.  That day the Greeleys paid $80,000 as the initial down payment on the purchase price.  (Exhibit 2).

While still in Belle Fourche, Mr. Walters suggested the Greeleys look at some Wyoming property because land prices were better over there.  Mr. Walters told the Greeleys he owned a 1,040 acre parcel and a 1,500 acre parcel in Goshen County, Wyoming.  Mr. Walters asked Mr. Greely how much money he had left.  After Mr. Greeley gave him a figure, Mr. Walters

suggested he would sell them the 1,040 acre parcel. This parcel had a wheat crop growing on it. Later when the Greeleys returned to Goshen County, Mr. Walters and Anthony were combining wheat on this parcel. Even though Mr. Walters said he intended to build a house on this property, he offered to sell it to the Greeleys and rent it back from them for $60 per acre.

This transaction was outlined in a purchase agreement. (Exhibit 15). The Greeleys paid Mr. Walters a total of $620,000 for the property. (Exhibits 13, 14 and 15). On September 30, 2008, Mr. Walters and his wife executed a warranty deed for the 1,040 acre Goshen County property. (Exhibit 16).

Because the Greeleys were still concerned about closing on the Butte County property, Mr. Walters met them at a restaurant in Austin, Minnesota, on July 20, 2008. Mrs. Greeley kept notes of this meeting. (Exhibit 3). Mr. Walters' son, Anthony, joined him for this meeting and was represented to the Greeleys as actively working with Mr. Walters in his various farming enterprises.

During this meeting in Austin, Mr. Walters showed Greeleys a warranty deed for the Butte County property. The deed was signed by Mr. and Mrs. Walters, was dated, and had an embossed notary seal. Mr. Greeley remembers the notary public to be a lady in Belle Fourche. Mrs.

7

Greeley remembers a drop of jelly fell on the document and Mr. Walters wiped it clean telling them not to worry. Mr. Walters indicated he needed to take the deed back to Belle Fourche and would record it to transfer title to the Greeleys. He also represented that the title insurance showed clear title, although a title insurance policy was not shown to the Greeleys. They gave Mr. Walters a check for $150,268.47 for the remainder of the purchase price. (Exhibits 2 and 3). Mr. Walters took the money and the executed deed with him at the end of the meeting. Mr. Greeley had complete faith in Mr. Walters as he was an honest person and had gained Mr. Greeley's trust over the years. At trial, the Greeleys produced an unsigned copy of the executed and notarized deed Mr. Walters showed them in Austin. (Exhibit 5).

On May 6, 2009, Mr. Walters signed a farm lease for both the Butte County 160 acres and the Goshen County 1,040 consistent with his promise to the Greeleys when they purchased the properties. (Exhibit 7). The lease had been prepared by Mrs. Greeley.

On a later trip to South Dakota, Mr. Walters suggested the Greeleys purchase yet another piece of agricultural land—the Goshen County, Wyoming, 480 arce parcel. He suggested the three of them purchase the property together and put it 50%-50% in the names of their children, Shawn Johnson and Anthony Walters. Mr. Walters said he was working to get the

property through a private purchase for $540 per acre from some elderly brothers.  Mr. Walters suggested this was good CRP land and would continue to be available for a hay crop which would provide a return on the purchase price.  During their discussion, Mr. Walters showed the Greeleys a full line of equipment in a building and represented it to be a part of the purchase price.  In Mr. Greeley's estimation, this equipment was well maintained and had a value of $25,000 to $30,000.  Later Mr. Walters called Mr. Greeley and said the purchase price was negotiated at $530 per acre.  The Greeleys agreed to purchase 50% of the Goshen County 480 acre parcel at this price.

Mr. Greeley and his daughter Shawn Johnson went to her bank where her father co-signed a note.  She issued a check to Robert Walters for $127,200 for her 50% interest on November 6, 2008.  (Exhibit 18).  Mr. and Mrs. Walters executed and filed the deed to Anthony Walters and Shawn Johnson on February 9, 2009.  (Exhibit 19).

Mr. Greeley first became concerned about these transactions when he saw Mr. Walters and Anthony at an auction.  When he asked how their farming operation was going, Mr. Walters said the Goshen 1,040 acre parcel was all planted to corn, but Anthony said they had gotten most of it planted to corn.  Mr. Walters immediately changed the subject.

In the fall of 2009 or early 2010, the Greeleys went to Wyoming.  Mr.
Greeley was shocked to see the Goshen County 1,040 acre parcel was 1,000
acres of weeds.  Based on his agricultural background he estimates it will
take 3 to 4 years to clean up, kill the weeds and reseed to a cash crop.  Mr.
Greeley obtained an estimate for the cost to eradicate the weed problem.
(Exhibit 17).  This estimate was $29,442.25 per year with the application
occurring for three years for a grand total of $88,326.75.  Id.  Later the
Greeleys learned that Mr. Walters paid between $420 and $430 per acre for
this property, not the $530 per acre purchase price Walters earlier
represented.

In January 2010, Mr. Greeley contacted Attorney Tom Brady.  Mr.
Brady ordered a title search of the Butte County 160 acre parcel.  (Exhibit
6).  The title search disclosed the Walters were purchasers of the Butte
County property by a contract for deed with the Leo and Irene Erhart Living
Trust, Leo L. and Irene M. Erhart, Trustees ("Erhart Trust").  Notice of this
contract had been recorded on March 3, 2008.  Id.  This transaction
occurred just three months before Mr. Walters' agreement with the Greeleys.
The contract for deed was news to Mr. Greeley who believed Mr. Walters
when he represented the warranty deed would be recorded and Walters
would provide the Greeleys with a clear title.

10

The Erhart Trust initiated a foreclosure proceeding against the Walters.  (Exhibit 8).  The Greeleys were included as defendants.  Id.  The Greeleys admitted service of the foreclosure documents on May 10, 2011. Id.  A judgment of foreclosure was filed on July 12, 2011.  (Exhibit 9).  The total redemption amount due was $105,512.68.  Id.  The judgment specifically directed that the Greeleys could not redeem the property.  Id. Mr. Walters did not redeem the property from the trust.  (Exhibit 10).  At trial, Mr. Walters admitted he could have paid off the Erhart contract for deed with the Greeleys' payments, but he used the money for other purposes.

The CRP payments to Walters for the Goshen County 480 acre parcel were not changed following the transfer of ownership to Anthony Walters and Shawn Johnson.  Rather, the Farm Service Administration paid Mr. Walters the 2009 CRP payment of $11,237 and he kept the money.  (Exhibit 21).  Part of  this CRP payment in the amount of $5,619 belonged to Ms. Johnson.  Mr. Walters claims he was justified in keeping her share of the CRP as he had repaired doors, weeded the yard, and cleaned up around the building on the property.  Other than Mr. Walters' own testimony, he presented no proof of these activities and no justification for withholding Ms. Johnson's CRP money.

On July 19, 2010, Shawn Johnson wrote the Goshen County Farm Service Administration Office and paid the fee to transfer her share of the CPR payments to her name.  (Exhibits 22 and 23).  She eventually received her 50% share of the 2010, 2011 and 2012 CPR payments.  (Exhibits 34, 35, and 36).

On February 11, 2010, and May 6, 2010, Shawn Johnson paid all of the real estate taxes totaling $847.30 for the 2009 year.  (Exhibit 24).  The first half of the 2011 real estate taxes were paid by Anthony Walters.  On November 11, 2011, Ms. Johnson paid the first half taxes of $521.70.  (Exhibit 25).  On November 11, 2012, Ms. Johnson paid the second half real estate taxes of $523.23 for 2011.  (Exhibit 26).  On November 2, 2012, Ms. Johnson paid $562.74 for the first half of the 2012 real estate taxes.  (Exhibit 27).  On May 6, 2013, she paid $562.13 for the second half of the 2012 real estate taxes.  (Exhibit 28).

During this same time period Ms. Johnson paid a third party $1,056 to cut the Goshen County 480 acre parcel and qualify for CRP payments.  (Exhibit 29).  Later payments of $600 per year were made to another contractor to protect the CRP payments.  (Exhibits 30 and 31).  She also paid $2,414.82 to have a contractor provide fertilizer and nitrogen for the property.  (Exhibit 33).

Mr. Walters never held a real estate license in South Dakota or elsewhere.  His net worth as of January 2013 was approximately $20,000. He claims to be living off of his wife's income.

## DECISION

"[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes."  <u>Hanna v. Plumer</u>, 380 U.S. 460, 465 (1965) (referencing <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)).

## RESCISSION

In South Dakota, a party may seek rescission under limited circumstances.

A party to a contract may rescind the same in the following cases only:

(1)    If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;

(2)    If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3)    If the consideration becomes entirely void from any cause;

(4)    If such consideration before it is rendered to him fails in a material respect from any cause; or

13

(5)     By consent of all the other parties.

SDCL § 53-11-2.  "[R]escission is equitable if the complaint asks the court to order rescission of a contract. . . . Since here the [plaintiffs] in their pleadings requested the court to enter a judgment of rescission, this is an action in equity." Northwest Realty Co. v. Carter, 338 N.W.2d 669, 672 (S.D. 1983) (internal citations omitted).  "While a party seeking rescission based upon mistake of fact must have exercised reasonable diligence, the same is not true for a party seeking rescission based upon fraud. . . . [N]egligence in trusting a representation will not excuse a positive wilful fraud[.]" Holmes v. Couturier, 452 N.W.2d 135, 137 (S.D. 1990) (internal citation omitted).  "A provision in a contract that the buyer takes the property as is does not confer on the seller a general immunity from liability for fraud." Id. at 137.  "If a buyer has been defrauded, he has an election of remedies available to him.  He can either rescind the contract, restore what he received and recover back what he paid, or he may affirm the agreement and sue for monetary damages." Id.

"Failure to rescind promptly after discovering the fraud precludes rescission." Northwest Realty Co., 338 N.W.2d at 671.  "[T]his court held that notification of rescission seven months after noticing the problem constituted reasonable diligence." Id. (citation omitted).  "[A]lthough one

and one-half years lapsed between knowledge and notice to rescind, [the

South Dakota Supreme Court] held the notice of rescission was timely."  Id.

**FRAUD OR DECEIT**

In South Dakota a party "who willfully deceives another, with intent to

induce him to alter his position to his injury or risk, is liable for any damage

which he thereby suffers."  SDCL § 20-10-1.  Deceit is defined as either:

> (1)   The suggestion, as a fact, of that which is not true, by
>        one who does not believe it to be true;
>
> (2)   The assertion, as a fact, of that which is not true, by
>        one who has no reasonable ground for believing it to
>        be true;
>
> (3)   The suppression of a fact by one who is bound to
>        disclose it, or who gives information of other facts
>        which are likely to mislead for want of
>        communication of that fact; or
>
> (4)   A promise made without any intention of performing.

SDCL § 20-10-2.  Subsection 3 "only imposes liability for fraudulent

concealment on a person 'who is bound to disclose.' "  Schwartz v. Morgan,

776 N.W.2d 827, 831 (S.D. 2009).  The South Dakota Supreme Court has

"relied on Restatement (Second) Torts section 551 to conclude that anyone,

including those in arms-length transactions, could have a duty to disclose

under SDCL 20-10-2(3) facts basic to the transaction, if he knows that the

other is about to enter into it under a mistake as to them, and that the

other, because of the relationship between them, the customs of the trade or

15

other objective circumstances, would reasonably expect a disclosure of those facts." Id. (quoting Restatement (Second) Torts § 551(2)(e)) (internal citation omitted).

"The requirement in the Restatement that one disclose facts basic to the transaction also demands that before imposing a duty there must be evidence that the information not disclosed was something not discoverable by reasonable care. . . . 'The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself.'" Id. (citing Restatement (Second) Torts § 551(2)(e)(cmt k)). "Moreover, the Restatement suggests limiting the 'facts basic to the transaction' analysis to circumstances 'in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is unaware.'" Id. (citing Restatement (Second) Torts § 551(2)(e)(cmt l)).

**PUNITIVE DAMAGES**

"Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct . . . . By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." State Farm Mut. Auto. Ins. Co. v.

16

Campbell, 538 U.S. 408, 416 (2003) (internal citation and quotation marks
omitted).  "Punitive damages may properly be imposed to further a State's
legitimate interests in punishing unlawful conduct and deterring its
repetition."  BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996).

South Dakota law directs punitive damages are "for the sake of
example, and by way of punishing the defendant."  SDCL § 21-3-2.
"Punitive damage awards extend not only to act as punishment for the
individual defendant for past tortious acts and deter the defendant from
repetition, . . . but also to serve notice to others who would be tempted to
repeat such actions in the future, that they do so at their substantial peril."
Schaffer v. Edward D. Jones & Co., 552 N.W.2d 801, 809 (S.D. 1996).  The
South Dakota Supreme Court has adopted "a five-factor test to determine
whether a punitive damage award is appropriate or excessive."  Id. at 810.
Those factors are: "(1) the amount allowed in compensatory damages, (2) the
nature and enormity of the wrong, (3) the intent of the wrongdoer, (4) the
wrongdoer's financial condition, and (5) all of the circumstances attendant
to the wrongdoer's actions."  Id.

The United States Supreme Court "has provided three guideposts for
due process review of the amount of a punitive damages award: (1) the
degree of reprehensibility of the defendant's conduct; (2) the disparity
between actual or potential harm suffered and the punitive damages award

17

(often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases." <u>Boerner v. Brown & Williamson Tobacco Co.</u>, 394 F.3d 594, 602 (8th Cir. 2005) (citing <u>BMW of North America, Inc.</u>, 517 U.S. at 574-75). "The degree of reprehensibility is the 'most important indicium of the reasonableness of a punitive damages award.' " <u>Id.</u> (citing <u>State Farm</u>, 538 U.S. at 419) (quoting <u>Gore</u>, 517 U.S. at 575).

**RESOLUTION OF CLAIMS**

<u>Butte County Property</u>

Mr. and Mrs. Greeley recovered a money judgment against Robert and Darla Walters for their actual loss on this property.  (Docket 56).  The judgment for "$232,268.47, together with prejudgment interest of $105,706.04, for a total money judgment of $337,974.51 . . . ." constituted full compensatory damages for Mr. Walters' conduct.  <u>Id.</u>

The court finds by clear and convincing evidence Mr. Walters committed actual fraud in this transaction.  SDCL §§ 20-10-2(1), (2) & (4). Mr. Walters knew he was obligated in a contract for deed with the Erhart Trust.  Mr. Walters knew there was an outstanding balance due and owing under the Erhart Trust contract at the time he negotiated the sale of the Belle Fourche 160 acre parcel to the Greeleys.  Mr. Walters knew and took

18

advantage of the fact that the Greeleys trusted him and relied upon his recommendations regarding the purchase of agricultural land in South Dakota.  Mr. Walters also knew the Greeleys were unfamiliar with real estate transactions in South Dakota.  He deceived them by showing them an executed and notarized "warranty deed," by assuring the Greeleys title insurance showed clear title in his name, and by promising that once he filed the warranty deed, title to the property would be in the Greeleys' name.

The court also finds by clear and convincing evidence Mr. and Mrs. Greeley are entitled to punitive damages from Mr. Walters.  His explanation of his handling of the Greeleys' $232,000 is not reasonable.  Mr. Walters took the Greeleys' money and diverted it to his own use rather than paying the Erhart Trust contract.  Mr. Walters' reprehensible conduct surrounding this transaction is not only shocking but evidences a manipulative mind bent on taking advantage of others who trusted him.  Awarding punitive damages against Mr. Walters will "not only to act as punishment for [his] for past tortious acts and deter [him] from repetition, . . . but also to serve notice to others who would be tempted to repeat such actions in the future, that they do so at their substantial peril."  Schaffer, 552 N.W.2d at 809. Considering all five of the factors set out in Schaffer, the court concludes the sum of $20,000 is an appropriate amount to punish Mr. Walters for his past conduct, deter him from similar conduct in the future, and put others

who may be contemplating similar conduct on notice that they do so at their peril.  Id.  This assessment of punitive damages complies with the due process requirements established by the United States Supreme Court.  Boerner, 394 F.3d at 602.

Goshen County 1,040 acres

It was the Greeleys' responsibility to conduct a reasonable investigation to determine the fair market value of this property.  Schwartz, 776 N.W.2d at 831.  The Greeleys could have examined the public records of the Register of Deeds or Treasurer's Office, which would have disclosed Mr. Walters' purchase price.  "[T]he fact that [Walters' purchase price] . . . was reasonably discoverable by the [plaintiffs] prevents a finding of a duty under Restatement (Second) Torts section 551."  Id.  The Greeleys made no independent investigation into the price Mr. Walters paid ($420 per acre compared to $530 per acre paid by Greeleys) and did not hire an independent appraisal to establish the fair market value.

Mr. Walters took advantage of the Greeleys in this transaction.  But his conduct is not so "so shocking to the ethical sense of the community," and is not "so extreme and unfair, as to amount to a form of swindling, in which the [plaintiffs were] led by appearances into a bargain that is a trap, of whose essence and substance [they were] unaware."  Id. at 831 (quoting Restatement (Second) Torts § 551(2)(e)(cmt l)).  Unlike the Belle Fourche

transaction, the Greeleys received their bargained for benefit—land for money.  SDCL § 53-11-2.  They just paid more for the property than they later thought they should have paid.  Plaintiffs are not entitled to a judgment of rescission on the Goshen County 1,040 acre parcel.

Farm Lease

Plaintiffs allege Mr. Walters engaged in fraud in the farm lease contract.  (Exhibit 7).  Contrary to plaintiffs' perception of the lease, there is no mention of it being a three-year lease or being renewable year-to-year for a term of three years.  Id.  Mrs. Greeley prepared the lease.  "There is a general rule that where there is any doubt or uncertainty as to the meaning of a lease, the lease should be construed most strongly against the lessor.  This is particularly true where the lease was prepared by the lessor."  Stella v. DePaul Community Health Center, Inc., 642 F.2d 258, 260 (8th Cir. 1981). If plaintiffs wanted to specify a three-year lease or an automatic renewal provision for a term of three years, they should have drafted the farm lease to say that.

In South Dakota, a breach of contract claim requires proof of the following: "1.  An enforceable promise; 2.  A breach of the promise; [and] 3.  Resulting damages."  Guthmiller v. Deloitte & Touche, LLP, 699 N.W.2d

21

493, 498 (S.D. 2005) (internal citations omitted).  Under the lease, Mr. Walters agreed to pay $60,960 to rent the property for one year.  Mr. Walters breached the lease by failing to make this payment.

The lease required Mr. Walters to "destroy all thistles, button-weeds, cockle burrs, and other noxious weeds growing on said land . . . and shall keep all roadways and other parts of the land, not in crop, mowed and free from growing weeds." (Exhibit 7 at p. 2 (capitalization omitted)).  Mr. Walters breached the lease by failing to control the weeds.  Plaintiffs testified they will be required to apply chemical weed killers for three years at a cost of $29,442.23 per year.  Plaintiffs are entitled to money damages of $88,326.69 for Mr. Walters' breach of this provision of the farm lease.

In addition, under South Dakota law, prejudgment interest is allowed "from the day that the loss or damage occurred . . . ." SDCL § 21-1-13.1.  That section further provides: "Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate of interest specified in § 54-3-16." The farm lease did not contain a prejudgment interest rate on damages.  South Dakota law directs prejudgment interest be calculated under § 54-3-16.  Id.  "Category B rate of interest is ten percent per year . . . ." SDCL § 54-3-16.  Prejudgment interest at ten percent per year on the sum of $149,286.69 from the date

the rent was due, August 1, 2009, to the date of entry of judgment, March 31, 2014, is calculated as:

| Daily Interest Rate | Number of Days | Prejudgment Interest |
|---|---|---|
| $40.90 | 1703 | $69,652.70 |

Post-judgment interest allowed on judgments entered in federal court is governed by 28 U.S.C. § 1961.  "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."[1]  28 U.S.C. § 1961(a).  The Greeleys are entitled to post-judgment interest on the total amount due them.

Goshen County 480 acres

Anthony Walters did not testify at trial and Shawn Johnson testified she never met her real estate partner.  The arrangements for both parties were conducted by their fathers, Mr. Walters and Mr. Greeley, respectively. Each father acted as an agent for their child.  Ms. Johnson acquiesced in this arrangement when she paid Mr. Walters her share of the purchase price.  As co-tenants under the warranty deed, Anthony Walters and Shawn Johnson are equal owners and each possess an undivided one-half interest

---

[1]The Board of Governors publication is found at: http://www.federalreserve.gov/releases/h15/current.

in the Goshen County 480 acre parcel.  Amdahl v. Lowe, 471 N.W.2d 770, 776 (S.D. 1991).

The partnership agreement was an oral agreement.  "The duration was not definite nor was a purpose expressed in writing.  Therefore, it is presumed that the purpose of the partnership was to 'carry on as co-owners a business for profit.' . . . In other words, it was a partnership at-will."  Mack v. Mack, 613 N.W.2d 64, 67 (S.D. 2000) (citing SDCL § 48-1-2) (other citation omitted).  "A partnership formed without a time specified for its continuance, and not formed for a particular transaction or the completion of a particular enterprise, will be considered a partnership to endure so long as the parties continue their mutual consent.  This type of partnership is known as a partnership at will."  Id. (internal citation omitted).  "Once a partnership is created, the partners owe a fiduciary duty to one another.  This duty between partners is characterized by a loyalty of the highest order."  Id. at 67.

Once the property was purchased in their names, Shawn Johnson and Anthony Walters each had a fiduciary duty to the other to report the results of income generated from the property.  Swartz, supra; Mack, supra.  Anthony Walters had a responsibility to report to Shawn Johnson his father's receipt of the 2009 CRP payment and to pay her a 50% portion, $5,619.  (Exhibit 21).  This payment was due Ms. Johnson on October 1,

24

2009.  Id. at p. 3.  In subsequent years, Ms. Johnson separately received

her one-half of the CRP payments.  (Exhibits 34, 35 and 36).

Similarly each of the owners had an equal obligation to pay the

expenses associated with the property.  "[A] person who has been unjustly

enriched at the expense of another is required to make restitution to the

other."  Hofeldt v. Mehling, 658 N.W.2d 783, 788 (S.D. 2003) (citing

Restatement of Restitution § 1 (1937)).  "Unjust enrichment occurs when

one confers a benefit upon another who accepts or acquiesces in that

benefit, making it inequitable to retain that benefit without paying."  Id.

(internal citations and quotation marks omitted).

The evidence disclosed Shawn Johnson paid most of the real estate

taxes for the property.  Those payments were:

| | |
|---|---|
| February 2, 2010 | $  434.05 |
| May 6, 2010 | $  413.25 |
| November 8, 2011 | $  521.70 |
| May 5, 2012 | $  523.23 |
| November 2, 2012 | $  562.74 |
| May 6, 2013 | $  562.73 |
| | $3,017.70 |

(Exhibits 24, 25, 26, 27 and 28).  Of this total, one-half of these tax

payments would be Anthony Walters' obligation, that is $1,508.85.  The first

half of the 2011 real estate taxes were paid by Anthony Walters, estimated

to be $521.70, one-half of which, $260.85, was Ms. Johnson's obligation.

Ms. Johnson is entitled to reimbursement from Anthony Walters for

$1,508.85 minus $260.85 for a total of $1,248.00 for real estate taxes paid

by her.  <u>Hofeldt</u>, 658 N.W.2d at 788.

Other expenses paid by Shawn Johnson include the following:

| | | | |
|---|---|---|---|
| November 6, 2010 | San Greeley | CRP clippings | $1,056.00 |
| September 1, 2011 | Anderson Farms | CRP clippings | $   600.00 |
| November 2, 2012 | Anderson Farms | CPR clippings | $   600.00 |
| July 2, 2013 | Helena Chemical | fertilizer | <u>$2,414.82</u> |
| | | | $4,670.82 |

(Exhibits 29, 30, 31 and 33).  Ms. Johnson is entitled to reimbursement

from Anthony Walters for one-half of these expenses, $2,335.41.  <u>Hofeldt</u>,

658 N.W.2d at 788.

Based on these calculations the total due to Ms. Johnson from

Anthony Walters is:

| | |
|---|---|
| 2009 CRP | $ 5,619.00 |
| Real Estate Taxes | $ 1,248.00 |
| Other Expenses | <u>$ 2,335.41</u> |
| Total | $ 9,202.41 |

Anthony Walters is in default and entry of default was entered by the

clerk.  (Docket 54).  The court will enter judgment for Shawn Johnson

against Anthony Walters pursuant to Fed. R. Civ. P. 54(b)(2) and award her

money damages totaling $9,202.41.

Ms. Johnson is entitled to prejudgment interest.  SDCL §  21-1-13.1.

Prejudgment interest at ten percent per year upon each sum she paid from

the date of the expenditure to the date of entry of judgment, March 31,

2014, is calculated as:

26

|  |  | Daily Interest Rate | Number of Days | Prejudgment Interest |
|---|---|---|---|---|
| CRP | | | | |
| October 1, 2009 | $5,619.00 | 1.54 | 1642 | $2,528.68 |
| | | | | |
| Taxes (1/2) | | | | |
| February 2, 2010 | $   217.03 | 0.06 | 1518 | $     91.08 |
| May 6, 2010 | $   206.63 | 0.06 | 1425 | $     85.50 |
| November 8, 2011 | $   260.85 | 0.07 | 874 | $     61.18 |
| May 5, 2012 | $   261.62 | 0.07 | 695 | $     48.65 |
| November 2, 2012 | $   281.37 | 0.08 | 514 | $     41.12 |
| May 6, 2013 | $   281.37 | 0.08 | 329 | $     26.32 |
| | | | | |
| Other (1/2) | | | | |
| November 6, 2010 | $   528.00 | 0.14 | 1241 | $   173.74 |
| September 1, 2011 | $   300.00 | 0.08 | 942 | $     75.36 |
| November 2, 2012 | $   300.00 | 0.08 | 514 | $     41.12 |
| July 2, 2013 | $1,207.41 | 0.33 | 272 | $     89.76 |
| | | Total Prejudgment Interest | | $3,262.51 |

Ms. Johnson is entitled to post-judgment pursuant to 28 U.S.C. § 1961 from the date of judgment.

For the same reasons stated above regarding the Goshen County 1,040 acre parcel, Ms. Johnson is not entitled to rescission of the purchase agreement for the Goshen County 480 acre parcel or punitive damages. SDCL § 53-11-2. Ms. Johnson received her bargained for benefit—land for money.

**ORDER**

Based on the above analysis, it is hereby

ORDERED that by clear and convincing evidence Robert D. Walters committed actual fraud in the Belle Fourche 160 acre parcel transaction

with Sanford H. Greeley and Shirley A. Greeley.  SDCL §§ 20-10-2(1), (2) & (4).

IT IS FURTHER ORDERED that by clear and convincing evidence Sanford H. Greeley and Shirley A. Greeley are entitled to punitive damages of $20,000 against defendant Robert D. Walters.

IT IS FURTHER ORDERED that with regard to the Goshen County 1,040 acre parcel transaction, Sanford H. Greeley and Shirley A. Greeley are not entitled to a judgment of rescission.

IT IS FURTHER ORDERED that with regard to the Goshen County 1,040 acre parcel farm lease, Sanford H. Greeley and Shirley A. Greeley are entitled to a money judgment for $149,286.69 against defendant Robert D. Walters.

IT IS FURTHER ORDERED that plaintiffs Sanford H. Greeley and Shirley A. Greeley are entitled to prejudgment interest of $69,652.70 against defendant Robert D. Walters to the judgment date of March 31, 2014.

IT IS FURTHER ORDERED that plaintiffs Sanford H. Greeley and Shirley A. Greeley are entitled to post-judgment interest as calculated pursuant 28 U.S.C. § 1961(a) against defendant Robert D. Walters from the judgment date of March 31, 2014.

IT IS FURTHER ORDERED that with regard to the Goshen County 480 acre parcel transaction, Shawn Johnson is not entitled to a judgment of rescission.

IT IS FURTHER ORDERED that with regard to the Goshen County 480 acre parcel, Shawn Johnson is entitled to a money judgment for $9,202.00 against defendant Anthony Walters.

IT IS FURTHER ORDERED that plaintiff Shawn Johnson is entitled to prejudgment interest of $3,262.71 against defendant Anthony Walters to the judgment date of March 31, 2014.

IT IS FURTHER ORDERED that plaintiff Shawn Johnson is entitled to post-judgment interest as calculated pursuant 28 U.S.C. § 1961(a) against defendant Anthony Walters from the judgment date of March 31, 2014.

Dated March 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE